> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 5, 2021
Decided October 12, 2021

**Before**



CERTIFIED COPY

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-1003

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>*v.*<br><br>ADRIAN C. PETERS,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Western Division.<br><br>No. 3:15-CR-50026(1)<br><br>Matthew F. Kennelly,<br>*Judge.* |

## O R D E R

Adrian Peters, who was convicted of producing and distributing child pornography, appeals the district court's decision to impose a life term of supervised release. He argues that the court procedurally erred by imposing such lengthy supervision without adequate explanation or consideration of his mental-health condition and personal circumstances. Because the district court appropriately justified the sentence, we affirm.

Peters persuaded at least three minors, ranging in age from 14 to 17, to engage in sexually explicit conduct for the purpose of recording them. Peters, who was around 20 years old at the time, met most of his victims over the internet. On some occasions, Peters communicated with the victims over online video chat and convinced them to engage in sexually explicit conduct (such as masturbation and exhibition of their genitals) so that he could record it. At other times, he was physically present with the victims while they engaged in conduct (including at least two instances of nonconsensual sexual relations) that he recorded on camera. During this period, Peters sexually victimized at least seven minors knowing they were underage at the time.

Peters pleaded guilty to three counts of producing child pornography in violation of 18 U.S.C. § 2251(a). He also stipulated to causing the transmission of live depictions of child pornography over the internet, as charged in four additional counts in the indictment. The statute to which he pleaded guilty set forth a prison sentence between 15 and 30 years on each count, as well as a term of supervised release between 5 years and life.

A probation officer calculated a guidelines range of 90 years in prison (life imprisonment reduced to 90 years based on the statutory maximum, *see* U.S.S.G. § 5G1.1(a)), and a life term of supervised release, the statutory maximum. *See* U.S.S.G. § 5D1.2. The officer proposed an extensive set of supervised-release conditions, including substance-abuse and sex-offender treatment, computer and internet monitoring, and restrictions on travel.

In his sentencing memorandum, Peters sought a statutory-minimum sentence of 15 years in prison and 5 years' supervised release. He provided a clinical psychologist's report diagnosing him with autism-spectrum disorder, a condition with which he previously had not been diagnosed. (The report, however, also suggested that he had "all the prognosticators of a good response to therapy.") The report attributed his criminal conduct to his inability to grasp social consequences and to his unusually sexualized childhood (his father encouraged him at a young age to engage in sexual activity and particularly with adult women). Peters also submitted the report of a mitigation specialist who similarly traced his conduct to his psychological condition and childhood abuse. According to the mitigation specialist, Peters' behavior could be "unlearned" through treatment and interventions.

At the sentencing hearing, the district court sentenced Peters to a below-guidelines sentence of 26 years in prison, followed by a within-guidelines life term of

supervised release. The court acknowledged Peters' autism diagnosis and the effect that his early sexualization and childhood abuse likely had on his pornography addiction and "deviant sexual interest" in minors. But the court described Peters' crimes as "extraordinarily serious" and "horrendous" for the victims, thus warranting a "really serious sentence."

The court elaborated on its reasons for imposing a lifetime sentence of supervised release. Because Peters required ongoing treatment to enable him to grasp social and sexual norms, a life term of supervision was necessary to protect the public from similar crimes after his release from prison. At one point during sentencing, the court suggested that Peters' life term of supervision approached something like a "default" sentence:

> [I]t just seems to me that the *almost default*, given the nature of the conduct, has to be a lifetime supervised release because there is enough to be concerned about here that … conduct could be attempted again in the future.

On appeal, Peters argues that the district court in fact equated a life term of supervised release with a "default" punishment for a sex offense, and thus procedurally erred by failing to assess his personal history and characteristics.

The district court adequately justified its imposition of a life term of supervision and appropriately focused on Peter's individual characteristics and the particular circumstances of this case. Applying the sentencing factors under 18 U.S.C. § 3553, the court emphasized that Peters' crime was very serious and had a severe impact on his victims, and that a life term of supervision was needed to protect the public, given his need for rehabilitation, his recent autism diagnosis, and the unlikelihood that he would receive effective treatment while in prison. *See, e.g., United States v. Lickers,* 928 F.3d 609, 621 (7th Cir. 2019) (need for ongoing treatment and need to protect young children); *United States v. Greene,* 970 F.3d 831, 834 (7th Cir. 2020) (risk of recidivism and protection of the public); *United States v. Shannon,* 518 F.3d 494, 496–97 (7th Cir. 2008) (same). As for the court's reference to a "default" sentence, Peters plucks the word out of context. The reference reflected only the court's acknowledgment that Peters' potential for causing additional harm and his need for ongoing intervention was too uncertain to warrant a lesser term. *See Greene*, 970 F.3d at 834 (district court "permissibly resolved its uncertainty about whether prison would rehabilitate [defendant by imposing] life term of supervised release").

Peters relatedly maintains that the district court's adoption of a "default rule" committing him to lifetime supervision resembles two cases in which the Fifth Circuit vacated life-supervision sentences that had not been justified based on any reasons particular to the defendants' sex-offense circumstances. *United States v. Fraga,* 704 F.3d 432, 441–42 (5th Cir. 2013); *United States v. Alvarado,* 691 F.3d 592, 598 (5th Cir. 2012). As the Fifth Circuit explained, "where a judge admits to the automatic imposition of a sentence, without regard for the specific facts and circumstances of the case or the range provided for in the statute, then it seriously affects the fairness, integrity, and public reputation of judicial proceedings." *Alvarado,* 691 F.3d at 598.

But unlike those cases, the district court here did provide reasons tailored to Peters' circumstances. The court acknowledged the likely influence of Peters' abusive childhood and psychological condition on his conduct but concluded that the seriousness of his crimes and his need for ongoing, intensive mental-health treatment justified a life term. This is the type of case-specific analysis missing from *Alvarado* and *Fraga*, in which the sentencing courts stated that they were imposing life terms because it was the usual sentence in child pornography cases. *Alvarado*, 691 F.3d at 598 ("I've . . . never not given. . . a lifetime supervision in child pornography[,]"); *Fraga*, 704 F.3d at 442 ("I usually do give . . . life supervised release in these situations[,]").

Next, Peters argues that the court did not adequately consider one piece of specific evidence that he offered in support of his argument for mitigation—the psychologist's report opining that he had a lower-than-normal risk of reoffending because individuals with autism typically respond well to treatment. In that report, the psychologist wrote that Peters "has all of the prognosticators of a good response to therapy" and was "capable of learning and developing positive alternatives" to his inappropriate social and sexual conduct.

But the district court adequately addressed the substance of this report. The court recognized the importance of treatment, but cautioned that its specific benefits for someone like Peters were uncertain, especially given his lack of treatment thus far:

> [T]his behavior isn't going to go away. . . . [Y]ou can't snap your fingers and make it go away. There is no kind of treatment he is going to get in prison that is going to make it go away. And that's why I imposed the lifetime term of supervised release because there is no predicting the future.

> I mean, I certainly hope that once Mr. Peters gets out, which he
> will, that he is able to get effective therapy. I know that therapy or
> at least my understanding is that therapy for people on the autism
> spectrum is not easy. It's not like talk therapy for somebody who
> has depression. It is a lot more complicated and difficult and long
> term that that.

This explanation was far more detailed and particularized than anything provided by the sentencing courts in the pair of Fifth Circuit cases.

Finally, Peters argues for the first time that the court failed to consider that a shorter supervision term would have sufficed in his case, given the "oppressive" nature of the conditions— including substance-abuse and sex-offender treatment, computer and internet monitoring, and restrictions on travel. He relies on *United States v. Quinn* for the proposition that "[t]he more onerous the terms [of supervised release], the shorter the period should be." 698 F.3d 651, 652 (7th Cir. 2012) (remanding defendant's sentence so that district court could consider the interaction between the length and terms of supervision).

Peters did not raise this argument in the district court, so we review it for plain error. And the court did not err, plainly or otherwise. It explained at length how it tailored the sentence to Peters' offense, personal history, and characteristics, and addressed the goals of deterrence, rehabilitation, and protection of the public. *See United States v. Kappes*, 782 F.3d 828, 847 (7th Cir. 2015); *United States v. Tounisi*, 900 F.3d 982, 989 (7th Cir. 2018) (per curiam). The court acknowledged the "onerous" nature of the conditions but appropriately concluded that a lifetime of supervision was needed to address the severity of Peters' crimes and protect the public.

AFFIRMED